IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  12-cv-00448-WYD-MJW

KEITH PARKER,

Plaintiff(s),

v.

KEVIN MILYARD,
RYAN LONG, and
JOHN DOE,

Defendant(s).

---

**RECOMMENDATION ON
PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER
AND OR PELIMINARY [sic] INJUNCTION UNDER THE RULES OF FEDERAL
RULES OF CIVIL PROCEDURE RULE 65(a)(b)
(Docket No. 26)
and
DEFENDANTS KEVIN MILYARD AND RYAN LONG'S MOTION TO DISMISS
(Docket No. 36)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case was referred to this court pursuant to an Order of Reference to

Magistrate Judge issued by Chief Judge Wiley Y. Daniel on June 14, 2012.  (Docket No.

24).

**PLAINTIFF'S ALLEGATIONS**

The pro se incarcerated plaintiff, Keith Parker, filed his original, undated

Complaint on February 21, 2012 (Docket No. 1).   On March 2, 2012, he filed a Motion

Request for Reassignment of This Case (Docket No. 7) in which he stated that this case

is "a continuing constitutional violation of a [sic] already filed lawsuit 08-cv-00737-MSK-

2

KLM This lawsuit 1983 is in conjunction and accord with cv-00448 and in reality one and the same. . . ."  (Docket No. 7 at 1).  That motion was denied as inappropriately filed in this action (Docket No. 10 at 2).

Thereafter, plaintiff was directed to file an amended complaint (Docket No. 11), which he did on June 4, 2012 (Docket No. 18).  In that pleading, plaintiff alleges the following.  He is a 45-year old African American male serving a twelve-year sentence in the Colorado Department of Corrections ("CDOC") for possession of cocaine.  He was released in October 2004 and returned March 2008.  He has a serious drug dependency problem.  Ever since 2000, he has been attacked by gangs (namely, Black Gangster Disciples, Crips, and some Blood gang-members) which have an "attack on sight order" or if they cannot get to the plaintiff on sight, then threaten him and make other CDOC offenders upset with him.  This is known as a "green light on the plaintiff." (Docket No. 18 at 4, ¶ 2).  He is a marked man inside of the CDOC because of his cooperation with law enforcement officials which resulted in the deaths of rival gang members.  Nevertheless, nothing is done to protect him.

After a hearing, at which he informed Warden Milyard and others that he feared for his life in general population because there were gangs out to do him serious bodily harm and he showed them an enemy list and a copy of the 1983 complaint already filed, he was released from administrative segregation on June 3, 2011, and moved to general population on July 21, 2011.  Milyard informed plaintiff that if he did not go to general population, Milyard would put plaintiff back into administrative segregation for the rest of his time.  There is no protective custody in the CDOC.  Plaintiff was assaulted by gang members on three occasions in August 2011 at Sterling Correctional

Facility while in a unit that housed the most dangerous offenders, and he was assaulted several more times in September 2011 by gang members, but he was forced to remain in general population.

Finally, the CDOC, including John Doe, has demonstrated and is demonstrating racial discrimination on the plaintiff. He has been treated differently than white offenders seeking protective custody and "has been called a nigger seeking help from the (over seer) in which is a slave derogatory innuendo." The entire CDOC system is mainly white, and there is systematic racism.

Plaintiff seeks punitive, compensatory, consequential, and nominal damages, including damages for emotional distress, loss of enjoyment of life, and other pain and suffering, as well as declaratory and injunctive relief.

## PENDING MOTIONS

Now before the court for report and recommendation are the Defendants Kevin Milyard and Ryan Long's Motion to Dismiss (Docket No. 36) and the plaintiff's Motion [for] Emergency Temporary Restraining Order ["TRO"] and or Peliminary [sic] Injunction (Docket No. 26). Responses were filed to the respective motions (Docket Nos. 44 and 31). The court has carefully considered these motion papers as well as applicable statutes and case law and the court's file in this case and in Civil Action No. 08-cv-00737-MSK-KLM. The court now being fully informed makes the following findings, conclusions, and recommendations.

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.

4

1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

Motion for a TRO and/or a Preliminary Injunction

In his motion for a TRO and/or a preliminary injunction, plaintiff seeks placement in Protective Custody, away from the dangers of the gangs in the CDOC that are allegedly out to do him harm.  He asserts the following in his motion.  He has been assaulted over twenty times in over a five-year span, with the CDOC having prior knowledge and keeping plaintiff in general population to get assaulted again.  He "was assaulted (3) times by gang members while litigation was going on on a prior civil complaint on the same issues, claims in which the same thing is going on again, right now."  (Docket No. 26 at 2).  "[P]laintiff may suffer serious bodily injury permanent disfiguring and even death.  The plaintiff has been labeled a [sic] informant (snitch) by the gangs all thru out the [CDOC] but as of July 18, 2012 they still (C.D.O.C.) Have the plaintiff in general population being threaten every single day and attemps [sic] made to assault the plaintiff as soon as he get's [sic] in a place (blind spot) so the gangs can do the most harm."  (Docket No. 26 at 2).  Plaintiff was transferred to Fremont Correctional Facility, and upon entry, plaintiff informed CDOC that gang members had threatened him and have made attempts to assault the plaintiff, but plaintiff is still in general

population.  Plaintiff is waiting to get assaulted by gang members who are all known to

carry shanks (homemade knives).  Plaintiff has been threatened with knives at other

facilities.

Injunctive relief is an extraordinary remedy that should be granted only when the

moving party clearly and unequivocally demonstrates its necessity.  See Schrier v.

University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005).  In the Tenth Circuit, the party

requesting injunctive relief must establish that: (1) the party will suffer irreparable injury

unless the injunction issues; (2) the threatened injury outweighs whatever damage the

proposed injunction may cause the opposing party; (3) the injunction, if issued, would

not be adverse to the public interest; and (4) there is a substantial likelihood of success

on the merits.  Id.  Furthermore, "[b]ecause the limited purpose of a preliminary

injunction is merely to preserve the relative positions of the parties until a trial on the

merits can be held, . . . [the Tenth Circuit has] identified the following three types of

specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter

the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions

that afford the movant all the relief that [he] could recover at the conclusion of a full trial

on the merits."  Id. at 1258-59 (citation and quotations omitted).  In such a case, before

the court enters preliminary injunctive relief, the movant must make a heightened

showing of the four factors.  RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1209 (10th Cir.

2009).  "[W]hen the moving party demonstrates that the 'exigencies of the case require

extraordinary interim relief,' the district court may grant the motion upon satisfaction of

the heightened burden."  Id.  Furthermore, this court also "consider[s] well-established

law that prison management functions should be left to the broad discretion of prison

administrators to enable them to manage prisons safely and effectively. . . .   Courts

should grant injunctive relief involving the management of prisons . . . only under

exceptional and compelling circumstances."  Walker v. Meyer, 2009 WL 1965493, at *4

(D. Colo. July 8, 2009) (citations omitted).

        Here, defendants assert that this motion is very similar to at least two of the

approximately eighteen motions for TROs and preliminary and injunctive relief that

plaintiff filed in his prior lawsuit, Civil Action No. 08-cv-00737-MSK-KLM.  In those two

motions, plaintiff also sought to be placed in protective custody because his life was

allegedly in grave danger, but those motions were denied.  (See Docket Nos. 7, 8, and

14 in other case).  In fact, all eighteen of plaintiff's motions for TRO and preliminary

injunctive relief were denied in that prior lawsuit.  (See Docket No. 31 in this case, at 4

n.4, detailing plaintiff's motions and the orders entered).

        In today's report and recommendation, this court is recommending that the

defendants' motion to dismiss be granted.  Therefore, there is not a substantial

likelihood of success on the merits.  Furthermore, as found by Judge Weinshienk in

plaintiff's prior case with respect to similar motions for injunctive relief, plaintiff has failed

to allege any facts that demonstrate he is facing immediate and irreparable injury.  As

stated by Judge Wienshienk, "a party seeking a [TRO] must demonstrate clearly, with

specific factual allegations that immediate and irreparable injury will result unless a

[TRO] iis issued.  *See* Fed. R. Civ. P. 65(b)."  (See Docket no. 14 at 2 in prior action).

Plaintiff has failed to do so in this case as well.  It is thus recommended that his motion

be denied.

<u>Motion to Dismiss</u>

The two named defendants, Milyard and Ryan, seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds: (1) plaintiff's claims are barred by the settlement agreement that he and the CDOC executed in connection with Case Nos. 08-cv-00737-MSK-KLM, (2) plaintiff's protective custody housing claim is moot, and (3) the claims against defendants in their official capacities are barred under the Eleventh Amendment and should be dismissed.

Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56. *See id.*

<u>Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp.</u>, 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

*these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

        The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope

of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'"  Khalik v. United Air Lines, 671 F.3d

1188, 1191 (10th Cir. 2012).  The Circuit court has further "noted that '[t]he nature

and specificity of the allegations required to state a plausible claim will vary based on context.'" Id.  The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ."  Khalik, 671 F.3d at 1190 (quoting Iqbal, 129 S. Ct. at 1949)).  "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Id. at 1191.

This court recommends dismissal of the plaintiff's claims on the basis that they are barred by the settlement agreement he and the CDOC executed in Civil Action No. 08-cv-00737-MSK-KLM on March 23, 2012.  The claims plaintiff raises here either were alleged or could have been alleged in that lawsuit, and pursuant to the terms of the Settlement Agreement reached, plaintiff agreed to dismiss such claims.  Furthermore, as noted above, right after this action was commenced,

10

plaintiff himself expressly admitted that this lawsuit is "in reality one and the same"

as the other when he moved to consolidate this case with the other.  (Docket No.

7).

> The Settlement Agreement states in pertinent part:
>
> 4.  <u>COVENANT NOT TO SUE.</u>  Parker further agrees and covenants that, other than in matters identified in the Lawsuit, he did not sue and that in the future, he will not sue, or assert any federal, state, or administrative cause of action of any type or kind, at law or in equity, whether before a court of law or an administrative agency, against the CDOC, or any current and former employee, official, agent, or attorney of any such entity respecting any purported claim, cause of action, liability, expense, or damage arising out of any acts attributable to any of them that arise from the Incidents and the matters asserted in the Lawsuit, as well as during the negotiations generated in the course of reaching this Settlement Agreement and Release.
>
> . . .
>
> 9.  <u>DISMISSAL OF INSTANT LAWSUIT AND RELATED LAWSUITS</u>.  **Parker agrees to dismiss with prejudice the instant Lawsuit, as well as all claims and causes of action arising from or related to the Incidents that Parker did bring or could have brought** against the CDOC, as well as current and former employees, officials, agents, and attorneys of the CDOC, including, but not limited to, all individual defendants that had been a part of this Lawsuit.  **All claims and causes of action arising from or related to the Incidents, include all allegations pertaining to purported failures to protect at any CDOC facility in which Parker is or has been housed**; purported retaliatory threats in connection with Parker's grievance filings and/or threats to file a lawsuit or filing the instant Lawsuit; conditions of confinement, namely for a purported lack of outdoor exercise; the purported failure to provide medical treatment for mental health and chronic drug problems; the purported reading of his legal mail; and purported due process violations arising from placement in administrative segregation, **all of which are alleged, or could have been alleged, to have occurred at any time during the period set forth in Parkers complaint <u>up to and including the date of this Settlement Agreement</u>**.  Additionally, to effectuate the complete dismissal of the Lawsuit, each Party authorizes his or its counsel to submit a Joint Stipulated Motion to Dismiss with Prejudice the Lawsuit, Civil Action No. 08-cv-00737-MSK-KLM, in its entirety.

(Docket No. 36-1) (emphasis added).  This court agrees with the named defendants that pursuant to the Settlement Agreement, plaintiff expressly agreed to dismiss the claims asserted in this lawsuit because such claims had been brought at the time he signed the Settlement Agreement, were (by his own admission in Docket No. 7) related to the claims brought in the prior lawsuit, or concerned events that occurred during the period of time of the prior lawsuit's operative dates and the date of the Settlement Agreement. Plaintiff was represented by counsel during the negotiation and execution of the Settlement Agreement.  Defendants note that in exchange for plaintiff's waiver, the CDOC agreed to transfer plaintiff from his then-current facility (Sterling Correctional Facility) to Arrowhead Correctional Center or other facility that offers the CDOC's Drug & Alcohol Therapeutic Community and where plaintiff's enemies are not housed.

Based upon the findings above, this court finds that the plaintiff's voluntary dismissal with prejudice of his other lawsuit, based upon his Settlement Agreement, is a judgment on the merits, and thus the claims in this case are barred by the doctrine of res judicata.  See Brooks v. Barbour Energy Corp., 804 F.2d 1144, 1146 (10th Cir. 1986).

John Doe Defendant

Plaintiff's claim against defendant John Doe is merely a conclusory claim of systematic racism and racial discrimination against the plaintiff.  Such a conclusory claim fails to provide any factual allegations that plausibly suggest the defendant is liable.  Therefore, it is recommended that these claims be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**WHEREFORE,** for the foregoing reasons, it is hereby

12

**RECOMMENDED** that the plaintiff's Motion [for] Emergency Temporary Restraining Order be **DENIED**.  It is further

**RECOMMENDED** that the Defendants Kevin Milyard and Ryan Long's Motion to Dismiss (Docket No. 36) be **GRANTED**.  It is further

**RECOMMENDED** that the claims against defendant John Doe be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Based upon the above recommendations, it is further

**ORDERED** that the plaintiff's Motion for Appointment of Counsel (Docket No. 46) and Motion for Status Conference Hearing for Plantiff [sic] (Docket No. 47) are both **DENIED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

13

Date:  November 29, 2012                    s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                             United States Magistrate Judge